UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF DR. YUICHIRO YASUDA AND YU MENTAL CLINIC,<br><br>Applicant. | Case No. 19-mc-80156-TSH<br><br>**ORDER GRANTING MOTION TO QUASH**<br><br>Re: Dkt. No. 10 |

## I. INTRODUCTION

Applicants Dr. Yuichiro Yasuda and Yu Mental Clinic's (collectively, "Yasuda") filed an ex parte application to take discovery pursuant to 28 U.S.C. § 1782, which allows a district court to order a person residing or found within its district to produce documents or provide testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. ECF No. 1. Twitter, Inc. now moves to quash or modify the subpoena. ECF No. 10. Yasuda filed an Opposition (ECF No. 11) and Twitter filed a Reply (ECF No. 15). The Court finds this matter suitable for disposition without oral argument and **VACATES** the January 9, 2020 hearing. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Twitter's motion for the following reasons.

## II. BACKGROUND

Dr. Yasuda is a psychologist and owner of Yu Mental Clinic in Maebaru Chuo, Itoshima-Shi, Japan since 2008. Kanda Decl. ¶ 4, ECF No. 2. He is "a well-respected and well-known" psychologist in Japan. *Id.* Yu Mental Clinic operates with 55 doctors, 70 psychologists, and 88 staff members. *Id.*

On January 26, 2019, an unknown individual operating under the Twitter name of

@gefalleneren posted a private photograph of Dr. Yasuda and a woman and tweeted derogatory statements and hashtags about him and Yu Mental Clinic. *Id.* ¶ 5. The twitter post states, in Japanese, under the picture of Dr. Yasuda:

> Yuuki Yu (Yuicchiro Yasuda) was sued by a woman who was a former associate. It does not been clearly said that Yuuki Yu is sexually exploiting and the sexual toys of the charismatic psychiatrist are mass produced. #Defamation #managed prostitution #sex crime #extortion #engagement scam #incapacitated rape.

*Id.* & Ex. A; Mu Decl. ¶ 2 & Ex. A-1, ECF No. 3.

On April 10, 2019, the Twitter user tweeted again:

> The issue in which article links of Yuuki Yu's women issues and sexual relationships are being regulated. #Yuuku Yu #Yuichiro Yasuda #Yu Mental Clinic #Defamation #managed prostitution #sex crime #Engagement scam #incapacitated rape #sexual scandals #Exchange of Prosecutors and judges #defamation #managed prostitution #sex crime #intimidation #extortion #engagement scam #incapacitated rape.

Kanda Decl. ¶ 6 & Ex. B; Mu Decl. ¶ 3 & Ex. B-1.

Yasuda retained Ogasawara, Konno & Rokugawa Law Firm to initiate a civil lawsuit in Japan against the anonymous defendant for defamation and unlawful business interference under Japanese law. Kanda Decl. ¶ 1. On June 13, 2019, Yasuda applied to this Court ex parte for an order permitting discovery from Twitter into the identity of the @gefalleneren account user pursuant to 28 U.S.C. § 1782. ECF No. 1. Yasuda also submitted supplemental declarations from its Japanese counsel and translator. ECF Nos. 2-3. In his declaration, Japanese counsel states that he believes the Twitter posts defamed Applicant and unlawfully interfered with Applicant's business under Japanese law. Kanda Decl. ¶ 7. The Court granted Yasuda's request on June 17, 2019. ECF No. 5.

Twitter received the subpoena on August 15, 2019. Bleicher Decl., ¶ 2, Ex. 1, ECF No. 10. The subpoena requests the following categories of information associated with the @gefalleneren account:

> 1. All Documents showing the gefalleneren account's login histories, including dates, times, IP addresses, and access type, for each login;
>
> 2. All Documents showing the gefalleneren account's latest access log, including dates, times, IP addresses, and access type;

> 3. All Documents showing the gefalleneren account's access log when that account posted each review, comment, photograph, video, and/or rating on the Twitter page, including dates, times, IP addresses, and access type; and
>
> 4. All Documents identifying the gefalleneren account's users from the date that the account was created to present, including all names, addresses, email addresses (including email addresses corresponding with a Twitter account), telephone numbers, names of the computers used by gefalleneren account's user(s), and information regarding any credit cards registered to the gefalleneren account (except for the number of the credit card).

*Id.*, Ex. 1. Twitter requests the Court quash or modify the subpoena to require production only if Yasuda has satisfied the First Amendment's requirements for unmasking the identity of an anonymous speaker.

### III. LEGAL STANDARD

Section 1782 provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person[.]

28 U.S.C. § 1782(a). A litigant in a foreign action qualifies as an "interested person" under Section 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). Section 1782 permits district courts to authorize discovery where three general requirements are satisfied: "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citations omitted).

A district court has wide discretion to grant discovery under § 1782. *Intel*, 542 U.S. at 260-61. In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial

3

assistance," (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65.

A district court's discretion is to be exercised in view of the twin aims of § 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252. There is no requirement that the party seeking discovery establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *Id.* at 247, 261-63. "Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here." *Id.* at 263.

## IV. DISCUSSION

### A. Statutory Requirements

Yasuda's request satisfied the minimum requirements of § 1782. First, Twitter's principal place of business is in San Francisco, California, within this District. Second, to apply for discovery pursuant to § 1782, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. *Intel*, 542 U.S. at 258-59. Instead, all that is necessary is that a "dispositive ruling" by the foreign adjudicative body is "within reasonable contemplation." *Id.* at 259 (holding that discovery was proper under § 1782 even though the applicant's complaint was still only in the investigative stage). Yasuda has shown a "reasonable contemplation" of litigation. Third, § 1782 plainly states that discovery orders may issue upon the request of either a foreign tribunal or an interested party. 28 U.S.C. § 1782(a). Yasuda —as the prospective litigant—has a "reasonable interest" in obtaining judicial assistance and, therefore, may apply for judicial assistance pursuant to § 1782. *See Akebia Therapeutics, Inc. v. Fibrogren, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015). Lastly, Yasuda's request is an acceptable method of discovery under § 1782. *See In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976).

**B.    Discretionary *Intel* Factors**

The first three discretionary *Intel* factors also support granting the application. As to the first factor, Twitter is not a participant in Yasuda's contemplated proceeding. *Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, unavailable in the United States, may be unobtainable absent § 1782(a) aid."). Second, there is no indication that a Japanese court would reject information obtained through § 1782 discovery. In this situation, courts "err on the side of permitting discovery." *See In re Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) (collecting cases). Third, there is no evidence that the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of Japan.

Twitter's motion focuses the fourth *Intel* factor, whether the request is unduly intrusive or burdensome. As the Ninth Circuit has recognized, "the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995)). This protection applies in the context of § 1782 applications when a foreign civil litigant such as Yasuda seeks discovery in the United States with the assistance of the U.S. judicial system. *In re Yasuda*, 2019 WL 4933581, at *3 (N.D. Cal. Oct. 7, 2019). If the foreign litigant asserts that an anonymous speaker's speech is actionable, the First Amendment protects the speaker from being unmasked unless the applicant:

> (1) identifies the party with sufficient specificity that the court can determine that the party is a real person subject to suit; (2) identifies all previous steps taken to locate and identify the party; (3) demonstrates that the action can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to identifying information.

*In re Ex Parte Appl. of Jommi*, 2013 WL 6058201, at *4 (N.D. Cal. Nov. 15, 2013) (citing *Columbia Ins. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)).

Here, Yasuda has satisfied three of the *Jommi* requirements. First, Yasuda has demonstrated that the party is a real party subject to suit in Japan as it identified the URL address

5

of the anonymous defendant's Twitter account, the IP address and specific dates of the tweets. *See id.* (petitioner's knowledge of the author's "specific post on a specific blog" and the URL of the post was sufficiently specific to identify the defendant as a real party); *In re Frontier Co., Ltd.*, 2019 WL 3345348, at *3 (N.D. Cal. July 25, 2019) (Frontier "demonstrated that the party is a real party subject to suit" because it "identified the unknown defendant through the URL of their Cloudflare account, their IP address, and the specific date of the post.").

Second, Yasuda took steps to identify the author and his search revealed the server of the anonymous defendant is with Twitter. Kanda ¶¶ 8-10.

Third, discovery is likely to lead to identifying information. According to Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery that is relevant to any parties claim or defense." The subpoena issued to Twitter seeks IP addresses, account information and identifying information of the anonymous defendant's Twitter account to unmask their identity, which is relevant to Yasuda's anticipated defamation claim. *Jommi*, 2013 WL 6058201, at *4; *Frontier*, 2019 WL 3345348, at *5; *In re Letter Rogatory-Request for Int'l Judicial Assistance From the Harju Country Court in Estonia Petition of Lyoness Eesi OÜ*, 2017 WL 1436096, at *4 (N.D. Cal. Apr. 24, 2017) (holding petitioner's § 1782 request for specific user information to name defendants is necessary for resolving defamation claim in foreign court). Moreover, Yasuda's request is narrowly tailored as it seeks identifying information and not the content of any communication. *See Frontier*, 2019 WL 3345348, at *5 (granting a § 1782 request to issue a subpoena for the name, address, email address, telephone number and account holder settlement information, including credit card payments and credit card company). Internet service providers and operators of communication systems are "generally familiar with this type of discovery request." *In re Roebers*, 2012 WL 2862122, at *3 (N.D. Cal. July 11, 2012) (finding § 1782 application to subpoena Apple, Inc. and Yahoo! Inc. for identifying documents was not overly burdensome).

However, the Court finds Yasuda has failed to demonstrate the anonymous defendant has committed an act that can withstand a motion to dismiss. Mr. Kanda states generally that Yasuda has viable claims under Japanese law, but he does not explain his position. Instead, he merely

6

recites the tweets and states they constitute defamation and interference with business relations. Kanda Decl. ¶ 7. In his opposition, Yasuda argues "the acts complained of in Dr. Yasuda and Yu Mental Clinic's ex parte application are arguably defamation per se" because "[f]alesly charging a person with a crime or violation of the 'confidence reposed in him' is per se defamatory." Mot. at 8. This Court previously applied the *Jommi* test to another unmasking discovery request by Yasuda and held that the test is satisfied when the speech at issue is defamation per se. *See Yasuda*, 2019 WL 4933581, at *4. However, that request concerned allegations that "Dr. Yasuda had sexual relations with a female patient who was in high school, which led to her attempted suicide." *Id.* at *1. This Court held that the anonymous defendant had committed an act that can withstand a motion to dismiss because "[f]alsely charging a person with a crime or violation of the 'confidence reposed in him' is per se defamatory." *Id.* at *4 (citing *Wilens v. Doe Defendant No. 1*, 2015 WL 4606238, at *15 (N.D. Cal. July 31, 2015), *report and recommendation adopted*, 2015 WL 5542529 (N.D. Cal. Sept. 18, 2015). Here, it is not clear that the @gefalleneren tweets falsely charge Yasuda with any crime such that they are per se defamatory. Tweet 1 states that Yasuda was "sued by a woman who was a former associate" and claims that "[i]t does not [sic] been clearly said that Yuuki Yu is sexually exploiting and the sexual toys of the charismatic psychiatrist are mass produced." Tweet 1 also includes several hashtagged terms, including "#incapacitated rape," but it is not clear whether those terms are allegations levelled at Yasuda. Similarly, Tweet 2 appears to describe the contents of an article and contains several hashtagged terms related to sexual crimes, but it is not clear that Tweet 2 accuses Yasuda of any crime.

Even if Yasuda were able to demonstrate he could survive a motion to dismiss in a civil action in Japan, the Court must still consider the potential chilling effect of ordering disclosure of the Tweeter's identity. *Art of Living Found. v. Does 1-10*, 2011 WL 5444622, at *3 (N.D. Cal. Nov. 9, 2011) (citing *McIntyre*, 514 U.S. at 342). "[I]in conducting the First Amendment balancing that must be performed before permitting discovery that has implications for protected speech, it is not enough to consider the adequacy of the allegations; rather, courts are required to go beyond the pleadings to determine if there is an evidentiary basis for concluding that the requested discovery is appropriate." *In re PGS Home Co. Ltd.*, 2019 WL 6311407, at *5 (N.D.

7

Cal. Nov. 25, 2019) (citing *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005) ("It is not enough for a plaintiff simply to plead and pray. Allegation and speculation are insufficient. The standards that inform Rule 8 and Rule 12(b)(6) offer too little protection to the defendant's competing interests.").

In addressing the First Amendment implications of Yasuda's request, the Court looks to cases that have addressed similar requests in the context of civil discovery. In that context, courts in this District have ruled that in order to unmask an anonymous speaker, a litigant must "persuade[] the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." *Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields*, 385 F. Supp. 2d at 975-76). If a plaintiff makes this showing, the court must then "assess and compare the magnitude of harms that would be caused" to the plaintiff's and defendant's competing interests if the court ordered disclosure of the speaker's identity. *Id.*

In *Highfields*, the court addressed whether it should enforce a subpoena by the plaintiff, Highfields Capital, L.P., seeking disclosure of the identity of an "unidentified defendant" who had posted comments, which "[could] be interpreted as expressing disapproval or criticism of Highfields Capital – mocking its arrogance and condescension and suggesting that its high-priced investment advice is quite vulnerable to being both biased and wrong" - using the screen name "highfieldscapital." 385 F. Supp. 2d at 972, 975. The plaintiff sought to assert claims against the anonymous speaker for violation of its trademark rights, for unfair competition and defamation. *Id.* at 975. The court described the competing interests that must be considered in this context as follows:

> Most of the claims that plaintiff seeks to pursue in the federal court in Massachusetts sound, essentially, in plaintiff's interest in preventing competitive commercial exploitation of its property (name) and in protecting itself from unfair commercial abuse. These are, of course, completely legitimate interests. It is of some analytical moment, however, that the rights plaintiff seeks to defend are not as vulnerable or precarious as the rights defendant seeks to protect-and not as close to the central societal values that animate our Constitution.
>
> These differences in the interests and rights that are in tension when a private civil plaintiff seeks to discover the identity and address of an anonymous internet speaker inform the tests that courts have

8

applied in this kind of setting.

*Id.* The court went on to adopt a two-part test, asking first whether there is a "real evidentiary basis" for believing that the anonymous speaker has engaged in wrongful conduct that caused real harm to the party seeking discovery; and second, if that threshold requirement is met, balancing the harm resulting from an order requiring disclosure against the harm resulting from an order denying the request for disclosure. *Id.* at 975-76. The court concluded that the statements at issue were obviously intended to be ironic and that the potential chilling effect of disclosure outweighed the interests of the plaintiff in asserting claims against the anonymous speaker.

Here, the primary evidence in the record is the Tweets themselves, which fall in the category of commercial speech. *PGS*, 2019 WL 6311407, at *5. As such, it is appropriate to apply the *Highfields* test in considering the possible chilling effect that would result from granting Yasuda's application. *Id.*; *Music Grp.*, 82 F. Supp. 3d at 983 ("The Ninth Circuit has indicated that the *Highfields* test is one of middling rigor, appropriate where, as here, the challenged speech falls somewhere beneath the most protected realm of 'political, religious, or literary' discourse; is, in significant part, 'commercial speech' that enjoy 'lesser' protection; but may be more safeguarded than pure 'fighting words and obscenity,' which is 'not protected by the First Amendment at all.'") (quoting *Anonymous Online Speakers*, 661 F.3d at 1173, 1175-76; *Art of Living*, 2011 WL 5444622 at *5).

Applying the *Highfields* test, the Court concludes that Yasuda has not shown a "real evidentiary basis" that the Tweets caused real harm and even if he has, the harm to commercial speech of requiring disclosure outweighs the harm to Yasuda. With respect to the harm, as noted above, it is unclear why anyone reading the Tweets would understand them as charging Dr. Yasuda or the Yu Mental Clinic with any crimes such that the Tweets could be considered defamatory per se. Instead, the Tweets are similar to those in *PGS*, where the Court quashed a subpoena issued by the same counsel because (1) the Tweets at issue were not statements of fact but rather a "'rant'. . . [that] would be unlikely to cause real harm," (2) even if the Tweets at issue were statements of fact, there was no proof of any real harm, and (3) if real harm occurred, it was outweighed by the importance of First Amendment protection for "legitimate commercial speech."

9

2019 WL 6311407, at *6; *see also Music Grp.*, 82 F. Supp. 3d at 985 (holding that Tweets that directly and indirectly criticized the plaintiff's business practices and products were legitimate commercial speech protected by the First Amendment). As the court in *Music Group* found, "[t]hese are views in which other members of the public may well be interested—and that defendant has a right to express anonymously." 82 F. Supp. 3d at 985. Therefore, the Court finds that Yasuda's request for identifying information is unduly burdensome under *Intel*.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Twitter's motion to quash.

**IT IS SO ORDERED.**

Dated: December 20, 2019

THOMAS S. HIXSON
United States Magistrate Judge