UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF DR. YUICHIRO YASUDA AND YU MENTAL CLINIC,<br><br>Applicants. | Case No. 19-mc-80156-TSH<br><br>**ORDER GRANTING MOTION FOR RECONSIDERATION AND DENYING MOTION TO QUASH**<br><br>Re: Dkt. Nos. 10, 26 |

## I. INTRODUCTION

Applicants Dr. Yuichiro Yasuda and Yu Mental Clinic ("Applicants") move for reconsideration of the Court's order quashing their subpoena issued to Twitter, Inc. under 28 U.S.C. § 1782. ECF No. 26. Twitter filed an Opposition (ECF No. 31) and Applicants filed a Reply (ECF No. 32). The Court finds this matter suitable for disposition without oral argument and **VACATES** the February 20, 2020 hearing. *See* Civ. L.R. 7-1(b). Having considered the parties' positions and relevant legal authority, the Court **GRANTS** Applicants' motion and **DENIES** Twitter's motion to quash for the following reasons.

## II. BACKGROUND

Yasuda is a psychologist and the owner of Yu Mental Clinic in Maebaru Chuo, Itoshima-Shi, Japan. Kanda Decl. ¶ 4, ECF No. 2. On January 26, 2019, an unknown individual operating under the Twitter name @gefalleneren posted a private photograph of Yasuda and a woman and tweeted derogatory statements and hashtags about him and Yu Mental Clinic. *Id.* ¶ 5. The twitter post states (in Japanese) under the picture of Yasuda:

> Yuuki Yu (Yuicchiro Yasuda) was sued by a woman who was a former associate. It does not been clearly said that Yuuki Yu is sexually exploiting and the sexual toys of the charismatic psychiatrist

> are mass produced.  #Defamation #managed prostitution #sex crime #extortion #engagement scam #incapacitated rape.

*Id.* & Ex. A; Mu Decl. ¶ 2 & Ex. A-1, ECF No. 3.

On April 10, 2019, the Twitter user tweeted again:

> The issue in which article links of Yuuki Yu's women issues and sexual relationships are being regulated.  #Yuuku Yu #Yuichiro Yasuda #Yu Mental Clinic #Defamation #managed prostitution #sex crime #Engagement scam #incapacitated rape #sexual scandals #Exchange of Prosecutors and judges #defamation #managed prostitution #sex crime #intimidation #extortion #engagement scam #incapacitated rape.

Kanda Decl. ¶ 6 & Ex. B; Mu Decl. ¶ 3 & Ex. B-1.

Applicants retained Ogasawara, Konno & Rokugawa Law Firm to initiate a civil lawsuit in Japan against the anonymous defendant for defamation and unlawful business interference under Japanese law. Kanda Decl. ¶ 1. Applicants also applied in this District for an order permitting discovery from Twitter into the identity of the @gefalleneren account user pursuant to 28 U.S.C. § 1782. ECF No. 1. Applicants submitted supplemental declarations from their Japanese counsel and translator. ECF Nos. 2-3. In his declaration, Japanese counsel states that he believes the Twitter posts defamed Applicants and unlawfully interfered with their business under Japanese law. Kanda Decl. ¶ 7. The Court granted Applicants' request on June 17, 2019. ECF No. 5.

Twitter received the subpoena on August 15, 2019. Bleicher Decl., ¶ 2, Ex. 1, ECF No. 10. The subpoena requested the following categories of information associated with the @gefalleneren account:

> 1. All Documents showing the gefalleneren account's login histories, including dates, times, IP addresses, and access type, for each login;
>
> 2. All Documents showing the gefalleneren account's latest access log, including dates, times, IP addresses, and access type;
>
> 3. All Documents showing the gefalleneren account's access log when that account posted each review, comment, photograph, video, and/or rating on the Twitter page, including dates, times, IP addresses, and access type; and
>
> 4. All Documents identifying the gefalleneren account's users from the date that the account was created to present, including all names, addresses, email addresses (including email addresses corresponding with a Twitter account), telephone numbers, names of the computers used by gefalleneren account's user(s), and information regarding any credit cards registered to the gefalleneren account (except for the

2

number of the credit card).

*Id.*, Ex. 1.

On November 18, 2019, Twitter moved to quash or modify the subpoena to require production only if Applicants' satisfied the First Amendment's requirements for unmasking the identity of an anonymous speaker. ECF No. 10. On December 20, 2019, the Court granted Twitter's motion. ECF No. 17; *In re Yasuda*, 2019 WL 7020211 (N.D. Cal. Dec. 20, 2019). The Court found Applicants could not survive a motion to dismiss because they failed to show the tweets were defamatory and, even if they could, they had not shown a real evidentiary basis for believing that the anonymous speaker has engaged in wrongful conduct that caused them real harm. *In re Yasuda*, 2019 WL 7020211, at *4-5. The Court also found the potential chilling effect of disclosure outweighed Applicants' interests in asserting claims against the anonymous speaker. *Id.* at *5-6.

Applicants now move for reconsideration based on evidence they did not present in their opposition to the motion to quash. Specifically, on November 12, 2019, the Tokyo District Court issued a decision in which it determined the tweets by @gefalleneren were defamatory. Mot. at 4; Kanda Decl. ¶ 7, ECF No. 27. Applicants state they did not present this information to the Court previously because their Japanese counsel did not realize it would be pertinent until after he read this Court's December 20 ruling. Mot. at 5; Kanda Decl. ¶¶ 7-8. They also state Kanda was not in possession of the Tokyo Court's ruling until two days prior to Applicants filing their opposition to the motion to quash. Mot. at 5. Applicants move for reconsideration under Civil Local Rule 7-9 and for relief under Federal Rule of Civil Procedure 60(b).

### III. RECONSIDERATION

#### A. Civil Local Rule 7-9

Under Civil Local Rule 7-9(a), a motion for reconsideration may be granted before entry of judgment adjudicating all of the claims and rights and liabilities of all the parties in a case.[1] Civ.

---

[1] Orders made pursuant to § 1782 are normally considered final and appealable. *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 566 (9th Cir. 2011). However, under Northern District of California General Order No. 44, miscellaneous matters are randomly

3

L.R. 7-9(a). A motion for reconsideration may be made on three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the moving party did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments. Civ. L.R. 7-9(b). Motions for reconsideration are disfavored and "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1254 (9th Cir. 1999) (per curiam) (internal quotation and citation omitted). Furthermore, "[a] motion for reconsideration 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). Further, the moving party may not reargue any written or oral argument previously asserted to the court. Civ. L.R. 7-9(c).

**B.     Rule 60(b)**

Federal Rule of Civil Procedure 60(b) provides that

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence ...;
> (3) fraud ..., misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged ...; or
> (6) any other reason justifying relief.

Rule 60(b) is "remedial in nature and . . . must be liberally applied." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).

---

assigned to a magistrate judge and any objection to a magistrate judge's order is to be resolved by a district judge. General Order No. 44 ¶ E.3. As no appeal has been brought before a district judge, the Court finds Applicants' motion under Civil Local Rule 7-9 is appropriate here.

4

**C. Discussion**

As a preliminary matter, the Court finds Applicants have failed to show reconsideration is appropriate under Local Rule 7-9. Applicants rely on the Tokyo District Court's order, but they admit their Japanese counsel had possession of that order at least two days before they filed their opposition to Twitter's motion to quash. There has been no material difference in fact or law since this Court issued its December 20 ruling and the Court did not fail to consider the Tokyo District Court's order as Applicants did not present it. Accordingly, there are no grounds for reconsideration under Local Rule 7-9.

Instead, Applicants focus on the excusable neglect prong of Rule 60(b), arguing their Japanese counsel did not realize the Tokyo District Court's decision was relevant until after reading this Court's December 20 ruling. Mot. at 5. In evaluating whether neglect is excusable, a district court must consider "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993)). In addition, when the circumstances of the case so warrant, courts should consider, and give proper weight to, any prejudice to the movant if she were denied relief. *Lemoge v. United States*, 587 F.3d 1188, 1195, 1198 (9th Cir. 2009).

Here, given the remedial nature of Rule 60(b) and the liberal standard under which it is applied, the Court finds Applicants have shown circumstances warrant relief. First, although Applicants' Japanese counsel had the Tokyo District Court's decision before local counsel filed their opposition to Twitter's motion, the Supreme Court in *Pioneer* applied a broad standard that permits a finding of excusable neglect even where the filer was in control of the situation. 507 U.S. at 391 ("'[E]xcusable neglect' . . . is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer."); *Mendez v. Knowles*, 556 F.3d 757, 765 (9th Cir. 2009) ("We thus reject the Warden's contention that Mendez's neglect cannot be excused because it was caused by circumstances within Mendez's control."). Further, briefing is complete

5

and Twitter does not argue that it faces any prejudice as a result of counsel's neglect. The Court also notes that Applicants sought reconsideration 14 days after the Court granted Twitter's motion to quash and no judicial proceedings have taken place in the meantime. Finally, Applicants have shown they would be prejudiced as without the name of the anonymous account holder, they are unable to proceed with their defamation lawsuit. Accordingly, the Court finds reconsideration appropriate.

## IV.   MOTION TO QUASH

### A.   Legal Standard

Section 1782 provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person[.]

28 U.S.C. § 1782(a). A litigant in a foreign action qualifies as an "interested person" under § 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). Section 1782 permits district courts to authorize discovery where three general requirements are satisfied: "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citations omitted).

A district court has wide discretion to grant discovery under § 1782. *Intel*, 542 U.S. at 260-61. In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance," (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65.

A district court's discretion is to be exercised in view of the twin aims of § 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252. There is no requirement that the party seeking discovery establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *Id.* at 247, 261-63. "Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here." *Id.* at 263.

## B. Discussion

### 1. Statutory Requirements

As the Court found in its previous order, Applicants' request satisfies the minimum requirements of § 1782. First, Twitter's principal place of business is in San Francisco, California, within this District. Second, to apply for discovery pursuant to § 1782, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. *Intel*, 542 U.S. at 258-59. Instead, all that is necessary is that a "dispositive ruling" by the foreign adjudicative body is "within reasonable contemplation." *Id.* at 259 (holding that discovery was proper under § 1782 even though the applicant's complaint was still only in the investigative stage). Applicants have shown a "reasonable contemplation" of litigation. Third, § 1782 plainly states that discovery orders may issue upon the request of either a foreign tribunal or an interested party. 28 U.S.C. § 1782(a). Applicants—as the prospective litigants—have a "reasonable interest" in obtaining judicial assistance and, therefore, may apply for judicial assistance pursuant to § 1782. *See Akebia Therapeutics, Inc. v. Fibrogren, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015). Lastly, Applicants' request is an acceptable method of discovery under § 1782. *See In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976).

## C. Discretionary *Intel* Factors

The first three discretionary *Intel* factors also support granting the application. As to the first factor, Twitter is not a participant in Applicants' contemplated proceeding. *Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's

7

jurisdictional reach; hence, their evidence, unavailable in the United States, may be unobtainable absent § 1782(a) aid."). Second, there is no indication that a Japanese court would reject information obtained through § 1782 discovery. In this situation, courts "err on the side of permitting discovery." *See In re Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) (collecting cases). Third, there is no evidence that the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of Japan.

Twitter's motion focuses the fourth *Intel* factor, whether the request is unduly intrusive or burdensome. As the Ninth Circuit has recognized, "the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995)). This protection applies in the context of § 1782 applications when foreign civil litigants such as Applicants seek discovery in the United States with the assistance of the U.S. judicial system. *In re Yasuda*, 2019 WL 4933581, at *3 (N.D. Cal. Oct. 7, 2019). If the foreign litigant asserts that an anonymous speaker's speech is actionable, the First Amendment protects the speaker from being unmasked unless the applicant:

> (1) identifies the party with sufficient specificity that the court can determine that the party is a real person subject to suit; (2) identifies all previous steps taken to locate and identify the party; (3) demonstrates that the action can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to identifying information.

*In re Ex Parte Appl. of Jommi*, 2013 WL 6058201, at *4 (N.D. Cal. Nov. 15, 2013) (citing *Columbia Ins. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)).

In its previous order, the Court found Applicants satisfied three of the *Jommi* requirements. First, Applicants demonstrated that the anonymous defendant is a real party subject to suit in Japan as it identified the URL address of the anonymous defendant's Twitter account, the IP address and specific dates of the tweets. *See id.* (petitioner's knowledge of the author's "specific post on a specific blog" and the URL of the post was sufficiently specific to identify the defendant as a real party); *In re Frontier Co., Ltd.*, 2019 WL 3345348, at *3 (N.D. Cal. July 25, 2019)

8

1 (Frontier "demonstrated that the party is a real party subject to suit" because it "identified the unknown defendant through the URL of their Cloudflare account, their IP address, and the specific date of the post.").

Second, Applicants took steps to identify the author and their search revealed the server of the anonymous defendant is with Twitter. Kanda Decl. ¶¶ 8-10, ECF No. 12.

Third, discovery is likely to lead to identifying information. According to Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery that is relevant to any parties claim or defense." The subpoena issued to Twitter seeks IP addresses, account information and identifying information of the anonymous defendant's Twitter account to unmask their identity, which is relevant to Applicants' anticipated defamation claim. *Jommi*, 2013 WL 6058201, at *4; *Frontier*, 2019 WL 3345348, at *5; *In re Letter Rogatory-Request for Int'l Judicial Assistance From the Harju Country Court in Estonia Petition of Lyoness Eesi OÜ*, 2017 WL 1436096, at *4 (N.D. Cal. Apr. 24, 2017) (holding petitioner's § 1782 request for specific user information to name defendants is necessary for resolving defamation claim in foreign court). Moreover, internet service providers and operators of communication systems are "generally familiar with this type of discovery request." *In re Roebers*, 2012 WL 2862122, at *3 (N.D. Cal. July 11, 2012) (finding § 1782 application to subpoena Apple, Inc. and Yahoo! Inc. for identifying documents was not overly burdensome).

However, the Court found Applicants failed to demonstrate the anonymous defendant committed an act that can withstand a motion to dismiss. *Yasuda*, 2019 WL 7020211, at *4. The Court noted that, although Kanda stated generally that Applicants have viable claims under Japanese law, he merely recited the tweets and stated they constitute defamation, without any support. *Id.* On reconsideration, Applicants now provide the Tokyo District Court's order, in which the court found @gefalleneren's tweets constitute defamation. Mu Decl., Ex. A-1, ECF No. 28. As such, Applicants have now shown their action can withstand a motion to dismiss.

Even so, the Court must still consider the potential chilling effect of ordering disclosure of the anonymous defendant's identity. *Art of Living Found. v. Does 1-10*, 2011 WL 5444622, at *3 (N.D. Cal. Nov. 9, 2011) (citing *McIntyre*, 514 U.S. at 342). "[I]in conducting the First

1    Amendment balancing that must be performed before permitting discovery that has implications

2    for protected speech, it is not enough to consider the adequacy of the allegations; rather, courts are

3    required to go beyond the pleadings to determine if there is an evidentiary basis for concluding

4    that the requested discovery is appropriate." *In re PGS Home Co. Ltd.*, 2019 WL 6311407, at *5

5    (N.D. Cal. Nov. 25, 2019) (citing *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975

6    (N.D. Cal. 2005) ("It is not enough for a plaintiff simply to plead and pray. Allegation and

7    speculation are insufficient. The standards that inform Rule 8 and Rule 12(b)(6) offer too little

8    protection to the defendant's competing interests.").

9    In addressing the First Amendment implications of Applicants' request, the Court looks to

10   cases that have addressed similar requests in the context of civil discovery. In that context, courts

11   in this District have ruled that in order to unmask an anonymous speaker, a litigant must

12   "persuade[] the court that there is a real evidentiary basis for believing that the defendant has

13   engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." *Music

14   Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing

15   *Highfields*, 385 F. Supp. 2d at 975-76). If a plaintiff makes this showing, the court must then

16   "assess and compare the magnitude of harms that would be caused" to the plaintiff's and

17   defendant's competing interests if the court ordered disclosure of the speaker's identity. *Id.*

18   Here, the primary evidence in the record is the tweets themselves, which fall in the

19   category of commercial speech. *PGS*, 2019 WL 6311407, at *5. As such, the Court applies the

20   *Highfields* test in considering the possible chilling effect that would result from granting

21   Applicants' request. *Id.*; *Music Grp.*, 82 F. Supp. 3d at 983 ("The Ninth Circuit has indicated that

22   the *Highfields* test is one of middling rigor, appropriate where, as here, the challenged speech falls

23   somewhere beneath the most protected realm of 'political, religious, or literary' discourse; is, in

24   significant part, 'commercial speech' that enjoy 'lesser' protection; but may be more safeguarded

25   than pure 'fighting words and obscenity,' which is 'not protected by the First Amendment at all.'")

26   (quoting *Anonymous Online Speakers*, 661 F.3d at 1173, 1175-76; *Art of Living*, 2011 WL

27   5444622, at *5). Given that the Tokyo District Court has already found that the tweets constitute

28   defamation, the Court concludes that Applicants have shown that the anonymous defendant

engaged in wrongful conduct and a "real evidentiary basis" that the tweets caused real harm. Although speech on the Internet receives First Amendment protection, "freedom of speech has its limits; it does not embrace certain categories of speech, including defamation . . . ." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245-46 (2002); *In re Application of Ontario Principals' Council*, 2013 WL 6844545, at *4 (E.D. Cal. Dec. 23, 2013) ("Given the content of the online postings and the contemplated defamation claims to be alleged thereon, general First Amendment principles concerning freedom of speech would not preclude the requested discovery."). Further, Applicants' request is narrowly tailored as it seeks identifying information and not the content of any communication. *See Yasuda*, 2019 WL 4933581, at *4 (finding subpoena to Twitter under § 1782 for potential defamation case in Japan satisfied First Amendment safeguards where applicant sought the IP addresses, account information and identifying information of the anonymous defendant's Twitter account to unmask their identity); *Frontier*, 2019 WL 3345348, at *5 (granting a § 1782 request to issue a subpoena for the name, address, email address, telephone number and account holder settlement information, including credit card payments and credit card company). Accordingly, the Court finds the subpoena satisfies First Amendment safeguards.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Applicants' motion for reconsideration and **DENIES** Twitter's motion to quash.

**IT IS SO ORDERED.**

Dated: February 14, 2020

THOMAS S. HIXSON
United States Magistrate Judge

11